# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Dynamic Integrated Services, LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Synergi Partners, Inc.,<br><br>　　　　Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff Dynamic Integrated Services, LLC ("**Plaintiff**" or "**Dynamic**"), complaining of Defendant Synergi Partners, Inc. ("**Defendant**" or "**Synergi**"), respectfully shows unto the Court:

## JURISDICTION AND PARTIES

1. Dynamic is a verified service-disabled veteran-owned small business ("**SDVOSB**") providing management consulting and information technology services to federal agencies, federal system integrators, and organizations supporting federal agencies.

2. Dynamic is a Florida limited liability company organized and existing pursuant to the laws of the State of Florida, and is headquartered at 3 West Garden Street, Suite 610, Pensacola, Florida 32502.

3. Dynamic is comprised of two members, who are citizens and residents of the State of Florida.

4. Defendant claims to be the largest privately-owned incentive and tax credit consulting and processing company in the United States, and claims that it specializes in identifying and processing federal and state tax credits for employers across the United States, including Puerto

Rico.[1]

5. Upon information and belief, Defendant is a South Carolina corporation with an office located at 151 West Evans Street, Florence, South Carolina 29501.

6. Complete diversity exists between Dynamic and Defendant, and the matter in controversy at the time of the commencement of this action exceeds the sum of seventy-five thousand and 00/100 dollars ($75,000.00).

7. This Court has jurisdiction over this civil matter pursuant to 28 U.S.C. § 1332(a)(1).

8. Dynamic is informed and believes Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

10. In response to the ongoing COVID-19 pandemic, the United States Congress passed the Coronavirus Aid, Relief and Economic Security ("**CARES**") Act in March 2020 as well as the American Rescue Plan Act in March 2021.

11. The latter statute included the expansion of a new tax break, the Employee Retention Tax Credits ("**ERTC**"), designed to provide emergency relief assistance to struggling businesses, especially small businesses.

12. As one of those small businesses impacted by the COVID-19 pandemic, Dynamic could have used emergency relief.

### Inducement Via Rodney Rich

13. Rodney Rich ("**Mr. Rich**") is a well-known businessman in Pensacola, Florida. His

---

[1] *About Us*, Synergi Partners (Aug. 1, 2022), https://www.synergipartners.com/about-us/.

company is Rodney's Holding Company (formerly known as Rodney L. Rich, & Co., Inc.), located at 300 North Tarragona Street, Pensacola, Florida 32501.

14. Around late March 2021, in an informal conversation between Mr. Rich and Dynamic, Mr. Rich informed Dynamic of the existence of the ERTC. Mr. Rich also recommended Defendant as a company that could provide efficient and quality service in calculating the maximum amount of credits to which Dynamic was entitled.

15. Moreover, Mr. Rich described Defendant as having insider knowledge with the ability to obtain more credits for businesses than they would otherwise be able to obtain via other means.

16. Days later, on or about March 30, 2021, Mr. Rich again advocated for Defendant in follow-up conversations.

17. On or about April 27, 2021, when Dynamic informed Mr. Rich they would not be engaging Defendant's services, Mr. Rich responded such a decision was unwise and reiterated Defendant could obtain more credits for businesses than through other means.

18. Based upon Mr. Rich's repeated recommendations and encouragement, Dynamic eventually contacted Defendant to engage its services.

19. The introductory phone call between Dynamic and Defendant occurred on or about May 12, 2021.

20. At no time did Defendant or Mr. Rich disclose any business relationship between the two.

21. Further, at no time did Defendant or Mr. Rich disclose what the fair market value of Defendant's services were.

### Purported Agreement and Contingency Fee

22. Following the introductory phone call between Dynamic and Defendant on or about May 12, 2021, Defendant e-mailed Dynamic claiming that it was "the firm to maximize the benefit" of

the ERTC and provided marketing materials to Dynamic. (Exhibit A, Declaration of Kimberly Sullivan).

23. One of those documents made representations that Defendant (1) "[w]ork[s] with [a] top U.S. legal firm and maintain[s] key connections with Legislators in D.C."; (2) "[i]nterpret[s] & appl[ies] legislation" in order to keep clients "in full compliance"; (3) was comprised of an "[e]xecutive team of veteran tax credit experts [with] more than 200 years of combined know-how"; and (4) would provide an eligibility/qualification analysis to give peace of mind that its client were, in fact, eligible for the calculated ERTC. (Exhibit A, Declaration of Kimberly Sullivan).

24. Thus, Defendant purported to bolster its reputation and knowledge by touting its connections with a top law firm and members of the United States Congress, as well as its ability to conduct legal analysis.

25. In the aforementioned promotional document, Defendant made a representation that there was "[n]o financial risk to working with [Defendant] – only charge a contingency fee based on amount of credits delivered." (Exhibit A, Declaration of Kimberly Sullivan).

26. Another document Defendant provided to Dynamic was a one-page flyer that described Defendant as having "[s]uccess-based fees." (Exhibit A, Declaration of Kimberly Sullivan).

27. Dynamic would later discover Defendant did not operate on success-based fees or contingency-based fees, because according to Defendant, payment was immediately due upon completion and submission of Defendant's work product.

28. Following the aforementioned introductory phone call, Defendant also provided a contract of adhesion to Dynamic.

29. On May 13, 2021, Dynamic and Defendant purportedly entered into this standard form

Client Services Agreement (the "**Purported Agreement**"), attached hereto as **Exhibit B**.

30. The Purported Agreement was executed without any alterations to the Defendant-drafted contract.

31. Pursuant to the Purported Agreement, Defendant was to perform certain tax and accounting services for Dynamic, including:

   a. Identifying and determining eligibility for any ERTC provided for in the CARES Act;

   b. Gather and analyze Dynamic's payroll and other accounting and financial data as necessary to determine eligibility for and calculate any ERTC that may apply;

   c. Calculate the amount of ERTC for which Dynamic was eligible;

   d. Prepare and deliver a so-called "Tax Credit Package" to Dynamic, which would include an eligibility analysis for the ERTC, supporting schedules, and a calculation of ERTC to which Dynamic was legally entitled; and

   e. Provide Dynamic internal and external audit support, including in the case of any Internal Revenue Service ("**IRS**") audit.

(Exhibit B, Purported Agreement, "SCOPE OF ENGAGEMENT; SERVICES," p. 1).

32. For the tax and accounting services Defendant was to provide, Defendant purported to charge Dynamic a fifteen percent (15%) so-called "contingency fee," which was based on the amount of ERTC that Defendant calculated for Dynamic. (Exhibit B, Purported Agreement, "FEES," p. 1).

33. However, this purported contingency fee was "not contingent upon [Dynamic's] ultimate filing and/or use of the Credits," but instead was due "[u]pon the receipt of the Tax Credit Package." (Exhibit B, Purported Agreement, "FEES," p. 1).

34. Further, the Purported Agreement holds the payment provision "shall survive the termination of [the Purported Agreement] with respect to any work performed prior to termination of [the Purported Agreement]." (Exhibit B, Purported Agreement, "FEES," p. 1).

35. It is Defendant's position that whatever the amount of ERTC calculated, and whether or not that amount is right or wrong—indeed, whether or not Dynamic is even eligible for ERTC or files/uses the Tax Credit Package—Dynamic must still pay Defendant the purported contingency fee.

36. Further, Defendant contends that Dynamic must pay the purported contingency fee to Defendant, even if Dynamic does not qualify for the ERTC or if Defendant's calculation is incorrect, leaving Dynamic to run the risk of: (a) filing an erroneous or false claim with the IRS; (b) being audited by the IRS; (c) having its ERTC claim denied, in whole or in part; and/or (d) being subject to civil or criminal penalties, and concomitant reputational harm.

37. Thus, the marketing material that claimed Defendant's fees were success-based, which Defendant submitted to Dynamic in order to induce it into executing the Purported Agreement, constituted a misrepresentation.

38. Moreover, for any ERTC disallowed by the IRS or other appropriate taxing authority, the burden is placed on Dynamic to seek reimbursement of the purported contingency fee, in whole or in part, from Defendant. (Exhibit B, Purported Agreement, "REFUND; AUDIT NOTICE," p. 2).

39. Despite the purpose of the Purported Agreement for Defendant to provide tax and accounting advice and services to Dynamic and other similarly-situated clients, Defendant places the following disclaimer at the end of the Purported Agreement and other standard form contracts with other similarly-situated clients:

> **MISCELLANEOUS.** Synergi DOES NOT provide tax advice, tax filings, or CPA [certified public accounting] services. Synergi is not

>a tax preparer or accountant and therefore explicitly disclaims any and all responsibility for preparation of a Client's federal and state tax returns. Synergi will not render or be required to render any service that could be interpreted as the practice of accounting.

(Exhibit B, Purported Agreement, "MISCELLANEOUS," p. 3).

40. Regardless of this disclaimer, all of the services allegedly provided by Defendant under the Purported Agreement entail the practice of tax and accounting advice and service. Defendant admitted as much in its advertising and marketing material it used to induce Dynamic to enter into the Purported Agreement, because such material represented Defendant as being comprised of an "[e]xecutive team of veteran tax credit experts [with] more than 200 years of combined know-how."

41. Indeed, if Defendant is not providing any tax or accounting advice or service, it is providing absolutely no services under the Purported Agreement at all, which means the Purported Agreement lacks consideration.

### Defendant's Assurances and Delays

42. Defendant represented to Dynamic that it would take only a few weeks for it to review Dynamic's information and provide the Tax Credit Package.

43. Additionally, in one of the previously-described promotional materials, Defendant stated it took "[p]ride . . . in getting money into our Clients' hands quickly." (Exhibit A, Declaration of Kimberly Sullivan).

44. Despite assurances that Defendant would provide efficient services, Defendant failed to execute its end of the bargain in a timely manner.

45. By June 1, 2021, and upon request by Defendant, Dynamic provided all of the requisite payroll information for fiscal year 2020 as well as the first quarter of 2021 for Defendant to calculate the credits for this time period.

7

46. Importantly, Defendant never gathered Dynamic's payroll information for June 2021, meaning information related to the second quarter of 2021 was incomplete.

47. On June 22, 2021, Dynamic requested a status update as well as a notional amount of credits it could anticipate.

48. Defendant responded that it would take about four to eight weeks after the introductory call on May 12, 2021, before it could provide the first credit delivery. Six weeks had elapsed at this point.

49. Dynamic requested another status update on July 19, 2021. The next day, Defendant responded that it would take "just a few more weeks," or words to that effect. At this point, ten weeks had elapsed.

## Termination of the Purported Agreement

50. On August 6, 2021, after three months of frustration, Dynamic discovered the true nature of Defendant's business practices.

51. First, upon information and belief, Defendant used representatives to market its services to other businesses (i.e. "referral sources") for a five percent commission of Defendant's collection.

52. Upon information and belief, Mr. Rich operated as one of Defendant's referral sources.

53. Second, upon information and belief, other companies that conduct the same type of services as Defendant are able to calculate tax credits within a few hours (as opposed to months) and charge pennies on the dollar relative to what Defendant charges.

54. Contrary to Mr. Rich's representations that Defendant had inside knowledge and could obtain more credits for businesses than they would otherwise be able to obtain via other means, Defendant did not possess any specialized knowledge and did not provide any unique services from other similarly-situated credit calculation companies.

55. Mr. Rich's representations were the main reason why Dynamic entered into the Purported Agreement with Defendant. Had Dynamic been aware of the true nature of Defendant's business practices from the outset, it never would have sought Defendant's services.

56. Thus, on August 7, 2021, immediately after discovering the true nature of Defendant's business practices, Dynamic submitted its notice of termination of the Purported Agreement by registered mail to the address set forth in the Purported Agreement. (Exhibit C, Termination Letter, p. 1).

57. Three business days later, on August 11, 2021, Mr. Rich, without prompting from Dynamic, contacted Dynamic to inquire about the termination. Notably, prior to this contact, Dynamic never informed Mr. Rich that it terminated the Purported Agreement or that it intended to terminate the Purported Agreement. During a phone call, Mr. Rich also stated that he would "make sure they [Defendant] would not charge Dynamic," or words to that effect. However, on August 18, 2021, Dynamic received a letter from counsel for Defendant, indicating Defendant had engaged a law firm to notify Dynamic of its alleged obligation to pay future invoices.

58. Pursuant to the Purported Agreement, termination is effective fifteen (15) business days from notice. (Exhibit B, Purported Agreement, "TERMINATION," p. 1).

59. Because Dynamic submitted notice of termination on August 7, 2021, the Purported Agreement was terminated on August 27, 2021.

60. Prior to the termination of the Purported Agreement on August 27, 2021, Dynamic was never informed about any work in progress, never received the Tax Credit Package, never received the required eligibility/qualification analysis, and never received any invoice.

### Tax Credit Package & Eligibility Analysis

61. On September 3, 2021, a full week after the Purported Agreement's termination and over

9

sixteen weeks after the introductory phone call between Defendant and Dynamic, Defendant sent Dynamic the Tax Credit Package.

62. The Tax Credit Package sent to Dynamic included credits for the second quarter of 2021, despite the fact that Defendant never gathered Dynamic's payroll information for June 2021.

63. Without payroll information for June 2021, Defendant would not be able to calculate accurately Dynamic's credit entitlement for the second quarter of 2021.

64. On September 8, 2021, Defendant sent two invoices (the "**Invoices**") to Dynamic, which totaled $205,013.64. (Exhibit D, Invoices).

65. The Invoices do not itemize any tasks by date or description; rather, the Invoices only provide the total dollar amount Defendant alleged Dynamic was required to pay. (Exhibit D, Invoices).

66. Further, these Invoices charge Dynamic for the calculation of the credits for the second quarter of 2021, despite the inability to calculate accurately Dynamic's credit entitlement for the second quarter of 2021.

67. Importantly, prior to submitting its Invoices, Defendant also failed to provide the eligibility analysis for the ERTC, which was a requirement under the Purported Agreement and was a representation from its marketing and promotional materials.

68. Clearly, as Defendant would have it, Dynamic should file for the calculated ERTC without any assurance Dynamic was entitled to the ERTC, putting Dynamic at risk of submitting a false or inaccurate tax filing. Worse still, regardless of whether Dynamic filed for the calculated ERTC, it is Defendant's position that Dynamic was required to pay the so-called contingency fee immediately upon receipt of the Tax Credit Package, again without either the required eligibility analysis or any assurance Dynamic was even entitled to the ERTC.

69. Dynamic never used or filed the Tax Credit Package submitted by Defendant. After all, having not received the eligibility analysis prior to termination or even alongside the Tax Credit Package, Dynamic was not certain it was even eligible for the ERTC.[2]

70. Ultimately, Defendant has maintained its position that Dynamic is obligated to make payment pursuant to the Purported Agreement.

71. Defendant's position is unreasonable and amounts to bad faith, if not illegality. Further, the Purported Agreement was procured by fraud, is unconscionable, and is unenforceable.

## FOR A FIRST CAUSE OF ACTION
**(Fraudulent Inducement via Mr. Rich)**

72. Dynamic re-alleges and re-avers the foregoing paragraphs as if set forth verbatim herein.

73. Upon information and belief, Mr. Rich operated as a referral source for Defendant.

74. The agency relationship between Mr. Rich and Defendant was and is a material fact.

75. Suppression of this material fact, which Mr. Rich and Defendant were duty-bound to disclose, is equivalent to a false misrepresentation and fraudulent concealment.

76. Mr. Rich and Defendant intended for Mr. Rich's representations to be relied upon and acted upon.

77. Dynamic relied upon Mr. Rich's representations under the induced belief that Mr. Rich was a third-party neutral with nothing to gain from his representations.

---

[2] Dynamic eventually received what purported to be an "Eligibility Statement" as opposed to an eligibility analysis from Defendant, but Defendant submitted this statement months later, on November 12, 2021. Moreover, this statement came only *after* Dynamic contested payment of the Invoices via a letter sent to Defendant on October 21, 2021, in part based on the fact Dynamic never received the required eligibility analysis. For all the reasons and circumstances set forth within this Complaint, Dynamic was and remains concerned with the reliability of Defendant's purported eligibility statement. Based in part on these concerns, Dynamic never used or filed the Tax Credit Package submitted by Defendant as it did not desire to put itself at financial risk of filing an erroneous or false claim with the IRS.

11

78. Dynamic justifiably relied upon Mr. Rich's representations.

79. Indeed, Mr. Rich's representations were material to the execution of the Purported Agreement, because they formed the very basis for the introduction between Defendant and Dynamic and the main reason why Dynamic was ultimately convinced to contract Defendant's services.

80. Through suppression of the material fact that Mr. Rich was acting as an agent of Defendant, Defendant fraudulently induced Dynamic to enter into the Purported Agreement.

81. Only much later after executing the Purported Agreement did Dynamic discover Mr. Rich's affiliation with Defendant, and that it had been falsely and unfairly induced into signing a one-sided contract.

82. Dynamic was damaged as a direct and proximate result of Defendant's wrongful actions, via its agent, Mr. Rich, which amount to a false misrepresentation and fraudulent concealment, and ultimately resulting in fraudulent inducement.

83. The Purported Agreement should therefore be voided and Dynamic should be relieved of any obligation to pay any fees or interest to Defendant.

**FOR A SECOND CAUSE OF ACTION**
**(Fraudulent Inducement via Defendant's Marketing Materials)**

84. Dynamic re-alleges and re-avers the foregoing paragraphs as if set forth verbatim herein.

85. Defendant represented to Dynamic via its written marketing and promotional materials provided to Dynamic that (1) it had connections to legislators in Washington, D.C. with whom it worked closely regarding tax credit issues; (2) its work was back-stopped by one of the top law firms in the United States; (3) it was comprised of a team of veteran tax credit experts with more than two hundred (200) years of combined know-how; (4) it would provide Dynamic with an eligibility/qualification analysis to give Dynamic peace of mind that it was eligible for the

calculated ERTC and would not be putting itself at risk when filing with the IRS; (5) there was "[n]o financial risk to working with [Defendant]" and they "only charge a contingency fee based on amount of credits delivered"; and (6) its fees were success-based.

86. Defendant deceptively represented that it was capable of—and in fact was—providing tax and accounting services, with the support of a top law firm and connected legislators, then attempted to disclaim that it was providing such services in the Purported Agreement.

87. However, if tax and accounting services are stripped from Defendant's services, then Defendant would not be providing anything of value to Dynamic, effectively resulting in Defendant charging Dynamic $205,013.64 for nothing.

88. Further, Defendant deceptively represented it would provide an eligibility analysis, but Defendant did not provide such an analysis prior to submitting its Invoices to Dynamic.

89. Finally, Defendant marketed its fees as being success-based, when in reality Defendant interpreted the Purported Agreement to require immediate payment of fees upon the receipt of the Tax Credit Package, regardless of Dynamic's eligibility for the calculated ERTC or use of the Tax Credit Package.

90. Contrary to Defendant's representations that there was no financial risk, Defendant contends that Dynamic must pay the purported contingency fee to Defendant, even if Dynamic does not qualify for the ERTC or if Defendant's calculation is incorrect, leaving Dynamic to run the risk of: (a) filing an erroneous or false claim with the IRS; (b) being audited by the IRS; (c) having its ERTC claim denied, in whole or in part; and/or (d) being subject to civil or criminal penalties, and concomitant reputational harm.

91. Defendant intended for its representations to be relied upon and acted upon.

92. Dynamic justifiably relied upon Defendant's representations.

93. These representations were material to the execution of the Purported Agreement, and constituted some of the initial communications between Defendant and Dynamic immediately prior to the execution of the Purported Agreement.

94. These representations were made falsely by Defendant, with knowledge of their falsity or recklessness as to whether they were true or false.

95. Only much later after executing the Purported Agreement did Dynamic discover the false nature of Defendant's representations, and that Dynamic had been falsely and unfairly induced into signing a one-sided contract.

96. Dynamic was damaged as a direct and proximate result of Defendant's wrongful actions, via its marketing and promotional materials, which amount to false misrepresentations and fraudulent concealment, and ultimately resulting in fraudulent inducement.

97. The Purported Agreement should therefore be voided and Dynamic should be relieved of any obligation to pay any fees or interest to Defendant.

### FOR A THIRD CAUSE OF ACTION
### (Declaratory Judgment – Unconscionability)

98. Dynamic re-alleges and re-avers the foregoing paragraphs as if set forth verbatim herein.

99. Because Defendant has maintained its position that Dynamic is obligated to make payment pursuant to the Purported Agreement, an actual controversy between the parties of sufficient reality to warrant issuance of a declaratory judgment exists. Further, an independent basis for jurisdiction exists as well, and the Court will not abuse its discretion in exercising jurisdiction.

100. Upon information and belief, the fees charged by Defendant are exponentially greater than the fair market value of its services.

101. In other words, the price charged by Defendant is disproportionate to the real and market value of the services provided.

102. Further, the fraudulent inducements set forth above constitute inequitable incidents that support into the unconscionability of the Purported Agreement.

103. Thus, in combination with the fraudulent inducements set forth above and the representation that there was "[n]o financial risk to working with [Defendant]," the grossly excessive price charged by Defendant constitutes an unscrupulous and unfair consideration that shocks the conscious.

104. Additionally, the classification of Defendant's fees as contingent, when it operates as exactly the opposite, is outrageous and immoral.

105. In combination with its marketing materials representing that such fees are success-based, Defendant's misleading characterization of its fees are unjust and one-sided for the purpose of unfairly and deceptively inducing and enticing companies like Dynamic to engage Defendant's services.

106. Lastly, the Purported Agreement holds the payment provision "shall survive the termination of [the Purported Agreement] with respect to any work performed prior to termination of [the Purported Agreement]." (Exhibit B, Purported Agreement, "FEES," p. 1).

107. Yet the Purported Agreement also requires fifteen (15) *business* days (i.e. three full weeks) for termination to be effectuated. (Exhibit B, Purported Agreement, "TERMINATION," p. 1).

108. Working in tandem, these provisions effectively operate to render termination impossible and meaningless.

109. After all, if Dynamic desired to terminate the Purported Agreement prior to receiving the Tax Credit Package (which it did in this case), Defendant would have fifteen (15) business days to conduct work and receive full payment based on the purported survivability of the fee provision.

110. This scenario is almost exactly what occurred in this case, except here, Defendant provided

15

Dynamic with the Tax Credit Package a full week *after* termination of the Purported Agreement occurred, which means Defendant took twenty (20) *business* days (i.e. four full weeks) to conduct the work *after* Dynamic submitted its notice of termination.

111. However, as Dynamic has discovered, it does not take fifteen (15) *business* days to conduct this work; instead, it only takes a few hours.

112. Thus, these two provisions effectively operate to allow Defendant to argue for its entitlement to full payment of any and all work despite the intent to terminate—and indeed, the actual termination of—the Purported Agreement.

113. A contract of adhesion that (1) is grossly and disproportionately excessive in price; (2) is misleading when it comes to the "contingent" nature of the fee; and (3) effectively eliminates the possibility of an early termination without incurring a payment obligation is unconscionable.

114. The Purported Agreement should therefore be declared void and Dynamic should be relieved of any obligation to pay any fees or interest to Defendant.

## FOR A FOURTH CAUSE OF ACTION
**(Declaratory Judgment – Effective Termination & No Substantial Performance)**

115. Dynamic re-alleges and re-avers the foregoing paragraphs as if set forth verbatim herein.

116. Because Defendant has maintained its position that Dynamic is obligated to make payment pursuant to the Purported Agreement, an actual controversy between the parties of sufficient reality to warrant issuance of a declaratory judgment exists. Further, an independent basis for jurisdiction exists as well, and the Court will not abuse its discretion in exercising jurisdiction.

117. On August 7, 2021, immediately after discovering the true nature of Defendant's business practices, Dynamic submitted its notice of termination of the Purported Agreement by registered mail to the address set forth in the Purported Agreement. (Exhibit C, Termination Letter, p. 1).

118. Pursuant to the Purported Agreement, termination is effective fifteen (15) business days

from notice. (Exhibit B, Purported Agreement, "TERMINATION," p. 1).

119. Because Dynamic submitted notice of termination on August 7, 2021, the Purported Agreement was terminated on August 27, 2021.

120. Prior to the termination of the Purported Agreement on August 27, 2021, Dynamic was never informed about any work in progress, never received the Tax Credit Package, never received the required eligibility/qualification analysis, and never received any invoice.

121. Put simply, Dynamic never received any benefit under the Purported Agreement.

122. At minimum, Defendant did not commit any substantial performance under the Purported Agreement prior to termination.

123. Thus, even assuming *arguendo* the Purported Agreement is not voidable for fraudulent inducement or voided by its unconscionable provisions, Defendant is not entitled to payment due to Dynamic's effective termination of the Purported Agreement prior to receiving any benefit.

124. Therefore, it should be declared Dynamic is relieved of any purported payment obligation to Defendant.

## FOR A FIFTH CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

125. Dynamic re-alleges and re-avers the foregoing paragraphs as if set forth verbatim herein.

126. Assuming *arguendo* the Purported Agreement is not voidable for fraudulent inducement, voided by its unconscionable provisions, or effectively terminated by Dynamic, nevertheless, Defendant is not entitled to payment due to its bad faith and fraudulent Tax Credit Package.

127. The Purported Agreement states Defendant must gather applicable client data, including payroll data, in order to calculate credits.

128. Because Defendant did not gather the necessary information for the second quarter of 2021, Defendant could not accurately calculate credits for this period.

129. Despite this inability to provide an accurate calculation, Defendant submitted a Tax Credit Package to Dynamic that purported to calculate the ERTC for the second quarter of 2021.

130. Further, upon information and belief, more credits are available per quarter in 2021 than are available in 2020, which demonstrates Defendant's bad faith for conducting this additional work and its motive in providing a calculation for this additional quarter, which occurred after the effective termination of the Purported Agreement.

131. Likewise, Defendant's representations of being comprised of a team of veteran tax credit experts with more than two hundred (200) years of combined know-how, yet disclaiming it was providing any tax or accounting services, further demonstrates Defendant's bad faith and unfair dealing.

132. Finally, despite assurances Defendant would provide a timely Tax Credit Package, Defendant did not provide the Tax Credit Package until a full week after the Purported Agreement's termination and over sixteen weeks after the introductory phone call between Defendant and Dynamic. Additionally, prior to submitting its Invoices, Defendant also failed to provide the eligibility analysis for the ERTC, which was a requirement under the Purported Agreement and was a representation from its marketing and promotional materials.

133. Defendant's dilatory and unreasonable actions demonstrate an utter refusal to provide Dynamic the purported beneficial services under the Purported Agreement. Thus, Defendant failed to comply with its requirements of operating in good faith and fair dealing.

134. Dynamic was damaged as a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing.

135. Therefore, it should be declared Dynamic is relieved of any purported payment obligation to Defendant.

## FOR A SIXTH CAUSE OF ACTION
### (Declaratory Judgment – Waiver and Estoppel of Payment)

136. Dynamic re-alleges and re-avers the foregoing paragraphs as if set forth verbatim herein.

137. Because Defendant has maintained its position that Dynamic is obligated to make payment pursuant to the Purported Agreement, an actual controversy between the parties of sufficient reality to warrant issuance of a declaratory judgment exists. Further, an independent basis for jurisdiction exists as well, and the Court will not abuse its discretion in exercising jurisdiction.

138. Assuming *arguendo* again the Purported Agreement is somehow valid, Defendant is not entitled to payment due to a statement made by Mr. Rich after Dynamic submitted its notice of termination to Defendant.

139. Mr. Rich made a statement, acting as an agent on behalf of Defendant, that Dynamic would not be charged for any invoice after termination of the Purported Agreement, or words to that effect.

140. Mr. Rich's statement was unambiguous.

141. Dynamic relied on that representation and promise by Mr. Rich, who Dynamic then understood to be operating as an agent of Defendant.

142. It was and is a reasonably expected and foreseeable by Mr. Rich, and by extension, Defendant, that Dynamic would rely upon Mr. Rich's representation and promise.

143. Dynamic's reliance on that representation and promise by Mr. Rich was reasonable.

144. Mr. Rich, as an agent of Defendant, had authority to bind Defendant to his representation and promise.

145. Mr. Rich's statement, therefore, operates as a waiver of any obligation by Dynamic to make payment under the Purported Agreement.

146. Without a declaratory judgment, Dynamic will sustain injury in reliance on Mr. Rich's

representation and promise due to the purported obligation to make payment on Defendant's Invoices.

147. Thus, Defendant should be estopped from pursuing any payment from Dynamic.

WHEREFORE, Dynamic respectfully requests:

a) the Purported Agreement be deemed voided by Defendant's fraudulent inducements;

b) the Purported Agreement be declared void due to its unconscionable provisions;

c) the Purported Agreement be declared effectively terminated prior to receipt of any benefit, such that Dynamic is relieved of any payment obligation;

d) Defendant's conduct be deemed a breach of the implied covenant of good faith and fair dealing, such that Dynamic is relieved of any payment obligation; and/or

e) Defendant's conduct, via its agent Mr. Rich, be deemed as a waiver of payment, such that Defendant is estopped from pursuing any payment from Dynamic.

Dynamic also respectfully requests any other declaratory or equitable relief as this Court deems just and proper.

/s/ Rhett D. Ricard
Rhett D. Ricard                    Fed ID No. 13549
Nexsen Pruet, LLC
205 King Street, Suite 400 (29401)
Post Office Box 486
Charleston, South Carolina 29402
PHONE: 843.577.9440
FACSIMILE: 843.720.1777
rricard@nexsenpruet.com

Attorney for Plaintiff
Dynamic Integrated Services, LLC

August 2, 2022
Charleston, South Carolina